ARTHUR B. NICKELSON ALIAS DAVID A. NICKELSON v. THE STATE.

No. 3781. Decided June 6, 1908.

**1.—Bigamy—Name of Bigamous Wife—Charge of Court—Idem Sonans.**

Where upon trial for bigamy the evidence showed that the bigamous wife was known by either "Ida" or "Eda," and there was no doubt of the fact of the real identity of the woman with whom the bigamous marriage was charged to have been contracted by the defendant, the mere circumstance that in the

marriage license her name appeared as Eda, was immaterial, and the court's charge to this effect was correct.

**2.—Same—Attorney and Client—Representation by Counsel.**

Where upon trial for bigamy, the defendant in his motion for new trial set up the fact, supported by affidavits, that he was not properly defended by his counsel; that he was under the belief that he had been divorced from his first wife, and had witnesses to sustain this belief, and had so informed said counsel, but that the latter had neglected to apply for process for the witnesses by whom he could have proved this matter, and that said counsel neglected his said defense and announced ready for trial over defendant's objection; that he had since employed competent counsel who would urge said defense if a new trial was granted, and that a different result would accrue, etc. Held, no cause for reversal, as defendant had made no effort to procure a continuance or postponement of his case.

Appeal from the District Court of Guadalupe. Tried below before the Hon. M. Kennon.

Appeal from a conviction of bigamy; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Seidemann & Short,* for appellant.—On question of court's charge on name of bigamous wife: Greta v. State, 9 Texas Crim. App., 429; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Watson v. State, 5 Texas Crim. App., 11; Robinson v. State, 5 Texas Crim. App., 519; Hobbs v. State, 7 Texas Crim. App., 117; Gardner v. State, 11 Texas Crim. App., 265; Wilson v. State, 18 Texas Crim. App., 270; Lott v. State, 24 Texas Crim. App., 723; Miers v. State, 34 Texas Crim. App., 161.

Ordinarily the action of the attorney as the representative of his client in the conduct of the cause will, and should, be binding upon the client in all matters where by law the client is not specially required to act for himself. The reason and justice of this rule must, however, in the very nature of things sometimes yield to the peculiar circumstances and surroundings of the case, and in no criminal case can the client be absolutely bound by the act of his attorney when the act is both prejudicial to his rights and in contravention of known and well established principles of law. McDuff v. State, 4 Texas Crim. App., 58; Calvin v. State, 25 Texas, 789; Bell v. State, 2 Texas Crim. App., 215.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appellant in this case was indicted in the District Court of Guadalupe County, for the offense of bigamy, being charged in the indictment that he did on the 15th day of February, 1906, unlawfully marry Ida Ammacher, he, the said Arthur B. Nickelson, alias David A. Nickelson, then and there having a former living and lawful wife, to wit: one Mary Lee Nickelson. The case was tried on the 17th day of May, 1907, and resulted in a verdict and judgment

of guilty in which the punishment of appellant was assessed at confinement in the penitentiary for a period of three years.

That appellant did marry the woman, Ida Ammacher (if that is the correct name), while he had another wife living, is attested and proven practically without controversy, and the substantial ground on which a reversal is here sought is that the evidence raised an issue as to the correct name of the Ammacher woman, and on this controverted issue appellant submits the following proposition: "It devolves upon the State to establish by competent evidence all of the material allegations in the indictment and in this case it was necessary for the State to prove that the Ammacher woman's name was Ida Ammacher as alleged in the indictment; and it was not sufficient to prove that her name was either Eda, Edith or Ida Amacher." In this connection appellant also challenges and questions the correctness of the charge of the court in respect to the same matter, which is as follows: "If you find as a matter of fact, and beyond a reasonable doubt, that the defendant as charged did marry Ida Ammacher, then the fact that the marriage license was issued to the defendant and *Eda* Ammacher would not affect the case." It is claimed and contended that this charge was erroneous in that same was a charge upon the weight of the evidence; that it was calculated to mislead the jury and make it believe that it made no difference whether the Amacher woman's name was Ida or Eda, although it was alleged in the indictment that her name was Ida Ammacher, and the court should have submitted this issue to the jury. By reference to the marriage license in evidence, it appears that such license were issued by the county clerk of Guadalupe County on the 15th day of February, 1906, and authorized any proper officer to solemnize the rites of matrimony between Mr. David A. Nickelson and Miss Eda Ammacher. The return of P. L. Herron who performed the marriage ceremony certifies that he united in marriage Mr. David A. Nickelson, and Miss Eda Ammacher. It will be observed that appellant was indicted as Arthur B. Nickelson under the alias of David A. Nickelson, but there is no allegation in the indictment that Miss Ammacher's name was other than Ida Ammacher, nor was it averred that he married the said Ida Ammacher under the name or alias of Eda Ammacher. In addition to the name Eda as given in the license, there was considerable testimony by various witnesses touching her true name. For instance, it was shown by Emil Mosheim that the word "Ida" in German is pronounced Eda, but the word "Eda" in German is pronounced Ada. Besides, in the license above referred to, the clerk says he issued this license to Eda Ammacher and David A. Nickelson. There is also considerable evidence in the record, which we deem it unnecessary to here reproduce, to the effect that in German Eda and Ida are idem sonams. Now, the question arises, under this evidence, was the court authorized to instruct the jury, as he did, in substance, that if in fact appellant married the woman known as Ida Ammacher, that the circumstance that the marriage license was issued to appellant and Eda

Ammacher would not affect the case; or, should it be held that this was a charge upon the weight of the evidence, and therefore, an invasion of the rights of appellant? Under all the forms of indictment, it is required that it shall state the name of the woman with whom the bigamous marriage is contracted. Such is the form laid down by Judge White in his Annotated Penal Code, and such also is the form laid down by Bishop in his Directions and Forms. It has been held that the indictment may be sufficient, however, without alleging the name of the first spouse. In view of the fact that the woman known as Ida Ammacher, was, in truth and in fact the woman with whom the bigamous marriage was contracted, and in view of the further fact, undisputed in the record, that she was known as Ida Ammacher, and that in German the English word "Ida" is pronounced "Eda," and whether referred to by the name pronounced Ida or Ada she was always known as the same person, we think the court was entirely justified in instructing the jury that if, in fact, appellant unlawfully married Ida Ammacher, the mere circumstance that in the marriage license her name appeared as Eda Ammacher, would be immaterial and of no concern. All the evidence shows that she was known by either or both names and there was no doubt of the fact of the real identity of the woman with whom the bigamous marriage was charged to have been contracted.

A new trial in the court below was sought on the ground that appellant had been denied a fair and impartial trial on account of the negligence of his attorney who tried the case. In this motion he represented that he was totally unfamiliar with the practice of the courts and that when he was arrested on the charge of bigamy he employed an attorney living in Austin; that he informed his counsel first employed that he had married Miss Ammacher upon the belief and under the full conviction that his first wife had procured a divorce from him, and gave him the name of certain witnesses, one of whom was named Rufus Burt, by whom he could establish the fact that he was justified in such belief; that he had spoken to this witness and he would testify that he was present at the time when he, appellant, was requested to sign a waiver of issuance of citation in a divorce proceeding instituted by his former wife, Mary Lee Nickelson; that he could also prove by one Bobby Lawrence, who resides in Austin, Travis County, Texas, that he was present when his said wife came to him and told him that she had procured her divorce; that he informed his said counsel of this fact and the further fact that since his arrest he, appellant, had spoken to said Bobby Lawrence and had talked with him and that Lawrence remembered the fact above stated. He avers further, in his motion, that he expected all this testimony to be produced at his trial and that he reasonably expected his attorney to use every means known to the law to secure the attendance of said witnesses at his trial, but that said attorney neglected to perform his duties in the premises, and this defendant was convicted without the proper defense having been made, and that he believes that had this testimony been introduced, the result would have been different; that

when the case was called for trial he told his said attorney that he did not want to go to trial without his said witnesses, but that his said counsel announced ready over his protest. It further appears in the motion that his said attorney first employed had spoken to the firm of Seidemann & Short, of Seguin, Texas, to assist in the trial of the case, but that he, appellant, never discussed the case with the last mentioned firm and was never able to pay them the fee agreed upon and had never paid but a small part thereof, and that he did not consider them bound to continue in the case for the pittance paid them, and that they never prepared said case for trial, and that all they did in this case was to render such assistance as they could after the commencement of the trial; that since said trial he has employed the said Seidemann & Short to prepare a motion for a new trial and that he communicated the facts above set out to them and that they spoke to his leading counsel in the preparation of this case for trial. The affidavit of Adolph Seidemann is attached to his motion and confirms the statements therein contained so far as they relate to the employment of his firm. He concludes his motion for a new trial by a strong statement to the effect that on account of and by reason of the gross negligence of his said attorney he had been convicted of a felony and all without any fault of his own. It may be that counsel for appellant was negligent. It is more likely, if the facts stated are to be believed, that he was unskillful and inapt in the management of his case, but we are not prepared to hold that where no application for continuance was made, and where the parties voluntarily and without protest and with the full knowledge of all the facts, made no effort to procure a continuance but announced ready for trial and submitted the case to the jury with no suggestion of the importance of the missing testimony, that in such case a rehearing should have been granted. The record shows that the case was submitted upon the State's testimony and that appellant introduced no evidence; he did not even become a witness in his own behalf and gave no excuse or reason why he believed the marriage to Miss Ammacher to be legal. He seems on the other hand, to have rested his case in the belief that the confusion or discrepancy in the name of Miss Ammacher was such as to entitle him to an acquittal and to have believed that the court would instruct the jury to return a verdict of not guilty. There is, as we believe, no error in the judgment of the court below and the same is, therefore, in all things affirmed.

*Affirmed.*

Brooks, Judge, absent.